16 F.3d 1225
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Hugh A. FREEMAN, Petitioner/Appellant,
v.
Daniel R. MCBRIDE and the Indiana Attorney General,
Respondents/Appellees.
 No. 93-1620.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 14, 1993.
Decided Dec. 27, 1993.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division, No. 92 C 651; Allen Sharp, Chief Judge.
 
 
 1
 N.D.Ind.
 
 AFFIRMED
 ORDER
 
 2
 Hugh A. Freeman appeals the district court's denial of his petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. Freeman argues that his guilty plea was involuntary because he was taking a significant dosage of the anti-depressant Thorazine at the time of his guilty plea hearing. Freeman also argues that the Indiana state trial court erred in failing to conduct a meaningful inquiry into Freeman's competence to plead guilty. Freeman argues that these two errors violated his Fourteenth Amendment due process rights. We affirm.
 
 I. FACTS
 
 3
 In December 1984, Freeman pled guilty to one count of theft and to being an habitual offender. He was sentenced to thirty-two years imprisonment. The state dismissed additional charges against him pursuant to a negotiated plea agreement. Prior to the plea hearing, Freeman was held in the Psychiatric Unit at Westville Correctional Center. On November 2, 1984, the Indiana trial court received a letter dated October 26, 1984 from Dr. Constan, a physician at Westville's Psychiatric Unit, who described Freeman's mental condition as "stabilized," and concluded that he had sufficient comprehension to understand the charges against him. Dr. Constan's opinion was based on a psychiatric evaluation of Freeman dated October 22, 1984. At that time, Freeman was taking 300 milligrams per day of Thorazine.[1]
 
 
 4
 At the guilty plea hearing on December 27, 1984, the presiding trial judge, Judge Bradford, asked Freeman about his mental condition and drug treatment. Freeman related that he had been diagnosed as a schizophrenic and that he was on Thorazine. He told the court that the medication did not affect his mental functioning, but rather made him tired. The court conducted a colloquy with Freeman, advising him of the rights he waived by pleading guilty, and accepted his guilty plea.
 
 
 5
 In Freeman's petition for state post-conviction relief, he alleged that his guilty plea was involuntary because his ingestion of Thorazine debilitated his mental abilities. At the hearing on his post-conviction petition, Freeman introduced evidence of his mental condition at the time of the guilty plea hearing which was not forwarded to Judge Bradford prior to that hearing.[2] Between October 22nd and the December 27th plea hearing, Freeman's condition deteriorated. Freeman was hospitalized from October 24 through 28 and on November 11 for self-mutilation. He had inserted metal objects into his abdomen that had to be removed surgically. Freeman claimed "voices" told him to do so. Freeman's dosage of Thorazine was increased to 2,000 milligrams per day. Dr. Constan's November 26th evaluation of Freeman indicates that Freeman was to remain in the psychiatric unit in restraints on suicide watch and continue to receive 2,000 milligrams per day of Thorazine. Freeman remained under this increased level of care, including the day of his plea hearing. Although the plea hearing did not take place for another month after the November 26th evaluation, this information was not forwarded to Judge Bradford.
 
 
 6
 At the post-conviction hearing Freeman also produced a medical expert, Dr. Robert Maickel, who testified that a dosage of 2,000 milligrams of Thorazine per day would cause a significant impairment of a person's ability to make a decision because it depresses the metal processes, generating apathy and distraction. Dr. Maickel stated that there is 95% probability that an individual of Freeman's height and weight taking 2,000 milligrams per day would not be capable of making voluntary and intelligent decisions. At no time did Dr. Maickel see or examine Freeman.
 
 
 7
 The post-conviction court denied Freeman's petition, finding that the guilty plea transcript indicated that Freeman was fully aware of the proceedings. The Indiana Court of Appeals affirmed. The court found that the trial court did not err in failing to conduct a competency hearing. The court also noted that Freeman did not request a competency hearing and that his conduct gave no warning of incompetency. The Indiana Supreme Court denied Freeman's petition to transfer. Freeman thereafter petitioned for habeas corpus relief under 28 U.S.C. Sec. 2254. In denying Freeman's petition, the district court found that Freeman was competent at the guilty plea hearing, and that the state trial court did not err by failing to conduct a competency hearing.
 
 II. STANDARD OF REVIEW
 
 8
 When reviewing a district court's decision to deny a petition for writ of habeas corpus, all questions of law are reviewed de novo. Montgomery v. Greer, 956 F.2d 677, 680 (7th Cir.), cert. denied, 113 S.Ct. 460 (1992); Matta-Ballesteros v. Henman, 896 F.2d 255, 258 (7th Cir.), cert. denied, 111 S.Ct. 209 (1990). The state court's factual finding that there is no bona fide doubt as to a defendant's competency is reviewed with a high level of deference and is presumed correct as long as it fairly supported by the record. 28 U.S.C. Sec. 2254(d)(8); Balfour v. Haws, 892 F.2d 556, 560 (7th Cir.1989) (citing Maggio v. Fulford, 462 U.S. 111, 116-18 (1983)). Factual findings made by state appellate courts are accorded the same statutory presumption as that accorded state trial courts in habeas proceedings. Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (per curiam); Dooley v. Duckworth, 832 F.2d 445 (7th Cir.1987), cert. denied, 485 U.S. 967 (1987).
 
 III. DISCUSSION
 
 9
 Due process requires that a defendant be competent to stand trial or plead guilty. United States v. Drope, 420 U.S. 162, 172 (1975); Pate v. Robinson, 383 U.S. 375, 385 (1966). The test for competency to plead guilty is the same as competency to stand trial: whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and] a rational as well as factual understanding of the proceedings against him." Godinez v. Moran, 113 S.Ct. 2680, 2685 (1993); Chichakly v. United States, 926 F.2d 624 (7th Cir.1991) (quoting Dusky v. United States, 362 U.S. 402 (1960)). Additionally, a guilty plea must be voluntary and intelligent. Boykin v. Alabama, 395 U.S. 238 (1969).
 
 
 10
 Both of Freeman's claims rest upon the argument that he was incompetent to plead guilty in light of his ingestion of large quantities of Thorazine. The first issue is whether the district court erred in determining that Freeman's guilty plea was voluntarily made. The second issue is whether the state trial court erred in failing to conduct a hearing to determine Freeman's competence to plead guilty.
 
 A. VOLUNTARINESS OF GUILTY PLEA
 
 11
 To grant the writ of habeas corpus outright, as Freeman suggests, the district court would have to conclude that the Indiana Appellate Court's finding that Freeman was competent to plead guilty was not fairly supported by the record. The Indiana Appellate Court was able to review the record, which included the transcript of the plea hearing as well as the evidence introduced at the post-conviction hearing, and the court's determination is fairly supported by the record.
 
 
 12
 There is no indication from the transcript of the plea hearing that Freeman was unable to consult with his attorney or that he lacked a factual understanding of the proceedings. Freeman's attorney never questioned his ability to plead guilty or requested a competency hearing.[3] Any change in Freeman's mental condition sufficient to affect his competency arguably would be noticed by his attorney, but the attorney did not raise the issue to the court. See United States v. Teague, 956 F.2d 1427, 1432 (7th Cir.1992) (court is entitled to rely on counsel's representations that client is competent).
 
 
 13
 Freeman's colloquy with the trial court indicates that he possessed a factual understanding of the proceedings. Freeman recounted the events surrounding the theft with which he was charged, reviewed his medical care for his mental illness, discussed his prior felony convictions, and indicated that he understood the sentence for theft was two to four years. Based on this evidence, the court's finding that there was no bona fide doubt as to Freeman's competency is fairly supported. See Balfour, 892 F.2d at 561 ("The fact that counsel did not raise the issue of Balfour's competence is probative of whether bona fide doubt existed as to Balfour's mental condition").
 
 
 14
 While Freeman is correct that hospitalization and medication histories are relevant to the competency question, Balfour, 892 F.2d at 561, the trial court previously had been made aware of both issues by the Psychiatric Unit at Westville and questioned Freeman accordingly. Both the inquiry into his previous hospitalization and his use of medication were resolved by Freeman's answers so as not to raise a bona fide doubt as to his competency.[4] The Indiana Appellate Court was not swayed by Dr. Maickel's opinion that a person of Freeman's size and weight taking 2,000 milligrams of Thorazine would be incapable of making voluntary and intelligent decisions. Although acknowledging this testimony, the Indiana Appellate Court agreed with the post-conviction trial court's reliance on the transcript of the plea hearing to find Freeman to be competent.
 
 
 15
 Freeman's argument that the district court should have held an evidentiary hearing to determine whether he was competent to plead guilty is waived because he failed to request such a hearing in the district court. United States ex rel. Cole v. Lane, 752 F.2d 1210, 1219 (7th Cir.1985); Sutton v. Lash, 576 F.2d 738, 744 (7th Cir.1978) (finding no error in failing to hold an evidentiary hearing because defendant did not request one or suggest any fact which was not known to the district court). However, respondents do not raise petitioner's waiver, and therefore have waived waiver. Fagan v. Washington, 942 F.2d 1155, 1157 (7th Cir.1991).
 
 
 16
 Although Freeman did not request a hearing, the district court could have determined that a hearing was necessary. It did not. "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair hearing in a state court, either at the time of trial or in a collateral proceeding." Id., Advisory Committee Notes (citing Townsend v. Sain, 372 U.S. 293, 318 (1963)). The Indiana post-conviction court held such a hearing, and it was permissible for the district court to defer to the findings it made following that hearing. Townsend, 372 U.S. at 318. In any event, because Freeman was not entitled to relief, no evidentiary hearing was required. See Rule 8(a), Federal Rules Governing Section 2254 Proceedings.
 
 B. FAILURE TO CONDUCT A COMPETENCY HEARING
 
 17
 Freeman argues that the state trial court erred in failing to conduct a meaningful inquiry to determine whether he was competent to enter a knowing, voluntary and intelligent plea. He rests his argument on the information he provided to that court at the plea hearing: he had a past history of mental illness and was taking Thorazine. A trial court must conduct a competency hearing when the information known to the trial court at the time of the trial or plea hearing is sufficient to raise a bona fide doubt regarding the defendant's competency. Robinson, 383 U.S. at 385. "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Drope, 420 U.S. at 172 (citing Robinson, 383 U.S. at 385); see also Teague, 956 F.2d at 1429.
 
 
 18
 Freeman's argument is without merit. The state trial court had received the October 26th psychiatric report in which Dr. Constan related that Freeman had stabilized, could understand the charges against him, and was taking 300 milligrams of Thorazine each day. At the plea hearing, the court questioned Freeman about any treatment for mental illness and use of medication. Freeman testified that he had been hospitalized for schizophrenia and was currently taking Thorazine. The court inquired further into the effect of the medication on Freeman's mental functioning, and Freeman reported that it just made him tired. While Freeman's medical condition had changed since the report, the court was unaware of it. Apparently counsel was not aware of it either: neither Freeman's counsel nor the prosecutor brought Freeman's condition to the court's attention or moved for an evidentiary hearing on the competency issue. Based on the medical information the court received from Dr. Constan, and on Freeman's own description of his illness and its treatment, there was no reason for the court to order a competency hearing on its own motion. Cf. Tiller v. Esposito, 911 F.2d 575, 576 (11th Cir.1990) (where the trial court possessed "significant information" regarding defendant's past irrational behavior); Chichakly, 926 F.2d at 632 ("There is certainly no need to conduct a competency hearing when there is no evidence before the Court of incompetency and when the defense attorney failed to request one and neither the prosecuting attorney nor the judge saw a need for one."); United States ex rel. Rivers v. Franzen, 692 F.2d 491, 499 (7th Cir.1982) ("the failure of defendant or his counsel to raise the competency issue is persuasive evidence that there was no bona fide doubt as to [the defendant's] competency").
 
 IV. CONCLUSION
 
 19
 Freeman is not entitled to a writ of habeas corpus because the record supports a finding of competency, making his guilty plea voluntary. Because Freeman received a hearing on the issue of competency in the post-conviction court, the district court could rely on that hearing and was not required to hold an additional hearing. Finally, Freeman was not entitled to a competency hearing before the state trial court that accepted his guilty plea. Judgment affirmed.
 
 
 
 [1]
 Freeman's expert at the post-conviction hearing testified that large dosages of Thorazine produce apathy and distraction in patients. S.R. 194, 195
 
 
 [2]
 This evidence included a physician's evaluation and expert testimony. The record is silent as to why this information was not given to Judge Bradford, and why counsel did not bring it to the court's attention
 
 
 [3]
 Interestingly, Freeman did not assert an ineffective assistance of trial counsel claim in his post-conviction petition. Apparently, counsel was unaware of the change in Freeman's mental condition during the two months before the plea hearing. See Balfour, 892 F.2d at 563-64 (discussing counsel's awareness of defendant's psychiatric treatment or use of medication in the context of effective assistance)
 
 
 [4]
 "Q. Taking any medications at all at this time?
 A. Thorazine. It's an anti-depressant. ...
 Q. What effect does that Thorazine have on you?
 A. Just makes me tired.
 Q. It doesn't affect your mental functioning, your ability to understand what is going on?
 A. No."
 State Record at 22-23.